1

2

3

4

5

6

7

8

9

10

11

12

**E-Filed 5/15/09**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

ELAN and REVEREND ORACLE,

                  Plaintiffs,

       v.

SANTA CRUZ COUNTY PLANNING
DEPARTMENT; TOM BURNS; SANTA CRUZ
COUNTY; ELLEN PIRIE; JAN BEAUTZ; NEAL
COONERTY; TONY CAMPOS; and MARK W.
STONE,

                  Defendants.

Case Number C 09-373 JF (PVT)

**ORDER[1] GRANTING IN PART
AND DENYING IN PART MOTION
TO DISMISS**

RE: Docket No. 9

      This action arises from the allegedly arbitrary, capricious, and abusive manner in which

the County of Santa Cruz and a number of its officials ("Defendants") discharged their duties

under state and local law with respect to the enforcement of local building codes applicable to

property owned by Elan and Reverend Oracle ("Plaintiffs"). Plaintiffs originally filed the action

on May 6, 2008 in the Santa Cruz Superior Court. Defendants removed it to this Court on

---

[1] This disposition is not designated for publication in the official reports.

1  January 27, 2009 after Plaintiffs amended their complaint to allege a federal civil rights claim.

2  Plaintiffs currently allege the following nine claims for relief: (1) petition for writ of mandate;

3  (2) petition for administrative mandamus; (3) cancellation of instrument and removal of cloud

4  on title; (4) failure to perform a mandatory duty; (5) imposition of excessive and improper fees;

5  (6) violations of civil rights under 42 U.S.C. § 1983; (7) inverse condemnation; (8) declaratory

6  relief; and (9) preliminary and permanent injunction.  Defendants move to dismiss the first

7  through fifth claims for failure to state a claim upon which relief may be granted.  For the

8  reasons given below, the motion will be granted in part and denied in part, with leave to amend.

9                                    **I. BACKGROUND**

10        The operative First Amended Complaint ("FAC") alleges the following: In 2001,

11  Plaintiffs purchased a property in Santa Cruz County with residential-agricultural zoning.  By

12  2005, hedges along the perimeter of the property facing the road had grown to a height of eight

13  to ten feet.  In 2005, Plaintiffs sought to install new driveway gates and fences to exclude wild

14  animals that had been entering the property and damaging Plaintiffs' crops.  Although County

15  regulations apparently do not require a permit for such work, David Keyon of the Planning

16  Department represented to Plaintiffs that a permit was required.  Plaintiffs accordingly filed a

17  permit application.  On May 3, 2006, Defendants approved the application but imposed the

18  purportedly unlawful condition that Plaintiffs maintain their hedge at a height of three feet or

19  less.  Defendants apparently supplied no supporting code citation.  Plaintiffs declined to sign or

20  accept the permit.

21        At around the same time, a neighbor who "prefers to speed around the curve in the road

22  adjacent to" Plaintiffs' property complained to the County's Code Compliance Division about

23  the height of Plaintiffs' hedges.  When Code Compliance inspector Aaron Landry visited the

24  property on May 12, 2006, however, he stated to Plaintiff Elan Oracle that he "s[aw] no

25  violation existing here."  Similarly, in August 8, 2006, inspector Kevin Fitzpatrick recorded in

26  the Code Enforcement Investigation Comments file that Plaintiffs' neighbor's complaint was

27  "not valid [because] . . . there is no line of sight hazard.  No action will be taken at this time."

28  Notwithstanding these conclusions, in November 2006, Keyon informed Plaintiffs that the

                                          2

height of the hedges violated conditions of the approved permit.  Not wishing to reduce their hedge to a height of three feet, Plaintiffs cancelled the pending permit application.

In January 2007, Keyon threatened to refer Plaintiffs to the Code Compliance Division if they did not shorten their hedge.  In February 2007, inspector Fitzpatrick, who previously had found no violation, posted a sign at the property reading "Notice of Santa Cruz County Code Violation / Intention to Record Notice of Violation."  While posting the notice, Fitzpatrick told plaintiffs that "we hemmed and hawed on whether we should place the red tag because we didn't want to do it."  In March 2007, Plaintiffs wrote to Fitzpatrick to protest the Notice of Violation.  Fitzpatrick responded by stating that "in order for the violation to be corrected, all vegetation along the road would have to be cut back to no more than three feet in height.  This also includes any fencing in that area.  Alternatively, you may apply for an over-height fence permit that in your case would apply to vegetation."

Instead of applying for the over-height fence permit, Plaintiffs implemented a number of traffic control measures, including a painted double-yellow line, striping, pavement boundaries, signs, and painted curbs to enhance the safety of what they considered an already safe rural road. Plaintiffs provided Defendants with photographs documenting a line of sight at the subject curve in excess of what the County required.  Plaintiffs and their consultant met with County planning representatives Keyon and Deming, who agreed that Plaintiffs could maintain the hedge at the height of six feet.  In June 2007, Keyon again stated with respect to the hedges that if Plaintiffs "bring them down to six feet[,] . . . this is a ministerial permit."  Based on these emails, Plaintiffs cut their hedge and fence to six feet in height and ensured that neither was closer than five feet from the paved road, as required.  Plaintiffs then filed a second building permit application.

In August 2007, the County approved the application, but again required that the fence and hedge be cut to three feet.  Again, the County did not cite any authority for its position. Later in the month, the County recorded a Notice of Code Violation based upon "fence vegetation (hedge) over three feet in height in front yard setbacks and abutting a road." Plaintiffs filed an appeal of the conditions appended to the second permit.  Defendants indicated

3

soon thereafter that they would not reconsider their decision.  Defendant Tom Burns, director of the Santa Cruz Planning Department, wrote that he had "had a chance to sit down with the folks here involved in this application . . . . [and that] [q]uite frankly, I am a bit concerned about why we are entertaining this application at all."  Burns wrote that he saw "no basis at all for permitting such a feature.  Quite frankly, it appears the original permit, which the applicant refused to sign, was quite generous."  The planner assigned to Plaintiffs' appeal also wrote that "it appears that your very best option might be to sign the original permit approval.  While this may not be the outcome your clients prefer, it may be the only thing that CAN be approved per our ordinance requirements."

In January 2008, Plaintiffs wrote directly to Burns complaining that the appeals officer already had made up her mind without reviewing the substantive contentions of the appeal.  Specifically, Plaintiffs pointed to the report from their traffic engineer, showing that no line-of-sight or other safety hazard existed.  In February 2008, inspector Fitzpatrick wrote to the appeals officer: "Alice, this violation has been recorded on title and Code Compliance . . . .  Can you just deny their application.  All this crap is not worth your time."  In April 2008, Defendants ordered Plaintiffs to cut their hedge to three feet and imposed further permit conditions.  In October 2008, after Plaintiffs had filed the instant action in the state court and the trial judge had overruled Defendants' demurrer on all grounds, Defendants recorded a Notice of Expungement indicating that the red flag would be cleared and that a building permit authorizing the hedge to remain in its current condition had issued.  Plaintiffs claim that all of the foregoing actions by Defendants damaged Plaintiffs by (1) devaluing and preventing the sale or refinancing of their property, (2) causing them to incur substantial consultant fees, attorneys' fees, and costs, and (3) requiring them to pay allegedly illegal and excessive fees in connection with the permitting process.

## II. LEGAL STANDARD FOR DISMISSAL PURSUANT TO RULE 12(b)(6)

A complaint may be dismissed for failure to state a claim upon which relief may be granted for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34

4

(9th Cir. 1984).  For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).   A complaint should not be dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Clegg*, 18 F.3d at 754.  However, a plaintiff is required to provide "more than labels and conclusions," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)*.*

### III. DISCUSSION

**A.**  **Propriety of suing members of the Board of Supervisors**

Plaintiffs have named as defendants in their official capacity five members of the Santa Cruz County Board of Supervisors.  Plaintiffs allege that the Board Members are liable under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-94 (1978) for the following "policy, practice, or custom" violations: (1) enacting County Code §§ 19.01.030, 19.01.070, and 19.01.080, which purport to give the County authority to record notices of violation against real property when state law prohibits recording such documents, *see, e.g.*, FAC ¶ 49(h), 59(k), 97(a); (2) failing to provide for an appeals board and/or unlawfully limiting the jurisdiction of such appeals board in violation of Title 24, Section 105 of the California Code of Regulations and Uniform Housing, Health & Safety Code, §§ 17910 et seq., including § 17922, *see id*. ¶¶ 38-40; (3) actively concealing the existence of and jurisdiction of the appeals board, *see id*. ¶¶ 37, 49(j); (4) deleting and/or failing to adopt Section 108.8 of Title 24 of the California Code of Regulations (2007 California Building Code) in the County Code without making any required findings, *see id*. ¶¶ 39-40; and (5) failing to provide procedures to challenge a Notice of Violation that satisfy due process requirements of the United States and California Constitutions, *see id*. ¶ 2.  Defendants argue in cursory fashion that these allegations either are not cognizable under *Monell* or do not adequately explain what role the Board Members played in the alleged wrongdoing.

To establish liability under *Monell*, a plaintiff must show that a municipal agent whose

5

1   decisions represent official policy caused the deprivation of rights at issue either (1) by enacting

2   "policies [that] affirmatively command that it occur," or (2) by "acquiescence in a longstanding

3   practice or custom which constitutes the 'standard operating procedure' of the local

4   governmental entity." *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 737 (1989) (citations

5   omitted).  Thus, "[w]hen it enacts an ordinance, a [municipal entity] engages in an act of official

6   policy" for *Monell* purposes.  *Felde v. Town of Brookfield*, 570 F. Supp. 2d 1070, 1074 (E.D.

7   Wis. 2008) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  Moreover, "[i]n

8   this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion

9   to dismiss even if the claim is based on nothing more than a bare allegation that the individual

10   officers' conduct conformed to official policy, custom, or practice."  *Lee v. City of Los Angeles*,

11   250 F.3d 668, 682-83 (9th Cir. 2001) (internal quotation marks and citation omitted).  In the

12   instant case, Plaintiffs allege a series of legislative and non-legislative actions purportedly taken

13   by members of the Board.  Under applicable precedent, these "bare allegation[s]" are sufficient.[2]

14   **B.   Mootness of claims for writs of mandate**

15          Plaintiffs' first, second, and third claims seek writs of mandate ordering (1) elimination of

16   the red tag on their property record, (2) issuance of a building permit authorizing the

17   improvements they sought to make and approving the height of their hedge, and (3)

18   expungement of the Notice of Violation.  Defendants argue that these claims are moot because

19   the red flag has been eliminated, the requested permit has issued, and the Notice of Violation

20   has been expunged.  Plaintiffs counter that the claims are not moot because: (1) the permit still

21   contains illegal or improper conditions; (2) removal of the red tag may have been "conditioned"

22   on Plaintiffs' signing of the allegedly illegal permit; and (3) Plaintiffs seek statutory damages,

23   attorneys' fees, and costs in connection with the alleged violations.

24

25          [2] In any event, "[o]fficial-capacity suits . . . 'generally represent only another way of
    pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473
26   U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690  (1978)).  "Accordingly, a § 1983 suit
    naming defendants only in their 'official capacity' does not involve personal liability to the
27   individual defendant."  *Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478,
    483 (5th Cir. 2000).
28

6

The California mandamus statute limits the use of writs of mandate to the following situations:

> A writ of mandate may be issued by any court . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled . . . .

Cal. Code Civ. Proc. § 1085. A writ of mandate thus "lies to compel the performance of a legal duty," *Envtl. Prot. Info. Center, Inc. v. Maxxam Corp.*, 4 Cal. App. 4th 1373, 1380 (1992), and where the conduct or condition sought to be enjoined has ceased or been resolved, a claim for a writ of mandate is moot. *See Daily Journal Corp. v. County of Los Angeles*, __ Cal. App. 4th __, 92 Cal. Rptr. 3d 219 (2009) (holding that company's request for writ of mandate to order county to terminate contract with company's competitor was moot, as contract had expired and new invitation to bid had been issued); *Maxxam Corp.*, 4 Cal. App. 4th at 1380 (holding that appeal from denial of petition for writ of mandate to order Department of Forestry and Fire Protection to withdraw approval of timber harvest plans was moot where lumber company had certified completion of harvesting work, and thus no longer could harvest timber under the challenged plans).

In the instant case, Defendants appear to misperceive the allegations of the complaint, which must be taken as true in the present context. First, Plaintiffs allege that *no* permit is required for the modifications they wish to make to their property, and that the permits they have been offered still contain additional illegal and injurious conditions. Second, they allege that *only* after Defendants repeatedly imposed the requirement that the hedge be cut to three feet, required an arbitrary ten-foot setback which deprived Plaintiffs of fifteen percent of their usable land, and charged Plaintiffs in excess of $10,000 for processing and denying Plaintiffs' permit applications, did Defendants suddenly record the Notice of Expungement. Further, it appears that Defendants expunged the red tag because "[a] permit ha[d] been issued to allow [a] fence/hedge abutting Tolak Road." Thus, according to Plaintiffs, the expungement was conditioned on a permit that Plaintiffs claim is unnecessary and illegal. Plaintiffs also note that no conditions on the property had changed between the time of Defendants' repeated permit

7

denials and Defendants' ultimate determination to issue a permit.  In fact, the only intervening
change in the parties' relationship appears to have occurred in Plaintiffs' state-court action,
initiated several months earlier, in which the trial judge overruled Defendants' demurrer on all
grounds asserted.

Plaintiffs claims are not moot because Defendants allegedly still have not done what they
are legally required to do–that is, issue a lawful permit or determine that no permit is required.
Even if Defendants had done so, "[i]t is well settled that a defendant's voluntary cessation of a
challenged practice does not deprive a federal court of its power to determine the legality of the
practice."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  Defendants'
repeated reversals with respect to the legality of the hedge–in particular their sudden
expungement of the red tag and issuance of the permit–appear to represent the height of arbitrary
and capricious decisionmaking.  Because Plaintiffs have alleged a plausible basis for believing
that the challenged conduct will recur, the claims are not moot.[3]

## C.     Claim for violation of mandatory duty

Plaintiffs allege that Defendants failed to perform mandatory duties in violation of
California Government Code § 815.6, which essentially "applies to public entities the familiar
rule of tort law that violation of a legislatively prescribed standard of care creates a rebuttable

---

[3] The Court notes that if the mandamus claims actually were moot, Plaintiffs' request for
statutory damages in connection with the challenged conduct would not revive them.  While the
mandamus statute does provide for an award of damages in connection with a mandamus action,
such damages are available only "[i]f judgment [is] given for the applicant" in such an action.
Cal. Code. Civ. Proc. § 1095.  Where there is nothing to mandate, mandamus claims are moot,
and there can be no mandamus judgment.  Plaintiffs' suggestion that damages may be recovered
through a mandamus claim that is moot amounts to transparent bootstrapping.

Plaintiffs' request for attorneys fees–statutory or otherwise–also would not sustain a live
controversy.  It is well-established that "[t]he existence of an attorneys' fees claim . . . does not
resuscitate an otherwise moot controversy."  *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th
Cir. 1996) (citing *Diamond v. Charles*, 476 U.S. 54, 70-71 (1985)); *see also Lewis v. Continental
Bank Corp*., 494 U.S. 472, 480 (1990) (noting that "interest in attorney's fees is, of course,
insufficient to create an Article III case or controversy where none exists on the merits of the
underlying claim").  Instead, "[c]laims for attorneys' fees ancillary to the case survive
independently under the court's equitable jurisdiction, and may be heard even though the
underlying case has become moot."  *Cammermeyer*, 97 F.3d at 1238 (citing *Williams v. Alioto*,
625 F.2d 845, 848 (9th Cir. 1980)).

presumption of negligence." *Lehto v. City of Oxnard*, 171 Cal. App. 3d 285, 292 (1985). A claim for failure to perform a mandatory duty must satisfy the following three requirements: (1) the duty imposed by the subject enactment must be mandatory, not discretionary; (2) the enactment must be intended to protect against the risk of the kind of injury suffered by the plaintiff; and (3) the breach of the mandatory duty must be a proximate cause of the plaintiff's injury." *See Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000). In addition, it is well-settled that a claim under § 815.6 must allege a specific enactment that creates the mandatory duty. *Lehto*, 171 Cal. App. 3d at 292-93 (1985); *see also Washington v. County of Contra Costa*, 38 Cal. App. 4th 890, 896-99 (1995).

Defendants argue that Plaintiffs' mandatory duty claim is deficient because Plaintiffs fail to identify any statute that creates the duties they allege. Plaintiffs allege the following duties:

> Defendants had a mandatory duty to advise that no permit was necessary for fencing or gates[,] to grant the First Permit Application without imposing unlawful conditions, to grant the Second Permit Application without imposing unlawful conditions, to refrain from issuing and recording an unlawful Notice of Violation against the Subject Property, to provide Petitioners with notice and an opportunity to be heard before recording the Notice of Violation, and to expunge the unlawful Notice of Violation after it was recorded.

FAC ¶ 71. As the source of these duties, Plaintiffs cite the following provisions of law: Santa Cruz County Code §§ 1.12.070, 12.10.315(a)(2) & 13.10.525(c)(3)(1); Cal. Health and Safety Code §§ 17920 et seq.; Cal. Uniform Housing Code §§ 203 et seq.; Cal. Health and Safety Code §§ 17960 et seq.; Cal. Gov't Code. §§ 65922 et seq.; Cal. Health and Safety Code §§ 18949.28 et seq.; Cal. Code of Regs., Title 24, §§ 105.2 and 312.1 & Title 25, §§ 12, et seq. Although several of these provisions do appear to create mandatory duties, Defendants argue conclusorily that "[n]one of the cited enactments set forth in plaintiffs' opposition or at other areas in their complaint create [sic] a 'mandatory duty.'" Reply, at 5:7-8. Defendants bear the burden of showing that their motion to dismiss should be granted, *see Watson v. County of Santa Clara*, No. C-06-04029 RMW, 2009 WL 817387, *4 (N.D. Cal. Mar. 26, 2009); simply asserting without authority that none of the statutory provisions creates a mandatory duty is insufficient.

Nonetheless, the Court agrees that Plaintiffs' pleading of statutory predicates is not sufficiently precise. Principally, Plaintiffs may not rely on broad "et seq." references to the

9

1  relevant California codes, but must "allege [a] violation of a specific provision" of the relevant

2  statutes.  *Sullivan v. City of Sacramento*, 190 Cal. App. 3d 1070, 1080 (1987) (rejecting

3  allegations of mandatory duty predicated on violation of public entity's "training, practices[,]

4  and procedures" since no specific provision was alleged).  Plaintiffs argue that the requirement

5  that they plead specific statutory provisions giving rise to mandatory duties is a "[s]tate court

6  pleading rule[] [that] do[es] no[t] apply in federal court even as to claims arising under state

7  law." Opp. at 8:7-9 (citing *Andresen v. Diorio*, 349 F.3d 8, 17 (1st Cir. 2003)).  They contend

8  that the liberal pleading standard of Rule 8(a) obviates the need for such specificity.  However,

9  these contentions lack merit, for two reasons.

10      First, where a plaintiff brings a claim that "borrows" a duty from another source of law,

11  federal courts routinely require plaintiffs to plead the specific source of that duty.  *See, e.g.*, *See,*

12  *e.g.*, *London v. New Albertson's, Inc.*, No. 08-CV-1173 H(CAB), 2008 WL 4492642, at *10

13  (S.D. Cal. Sept. 30, 2008) (granting motion to dismiss "borrowed" California Unfair

14  Competition Law claims where plaintiff failed to allege a specific predicate violation of another

15  statute).  Second, as the Supreme Court has explained, "[t]he liberal notice pleading of Rule 8(a)

16  is the *starting point* of a simplified pleading system, [and] . . . . [i]f a pleading fails to specify

17  the allegations in a manner that provides sufficient notice, a defendant can move for a more

18  definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S.

19  506, 514 (2002) (emphasis added).  This same concern with notice to defendants is precisely

20  what animates the requirement that plaintiffs plead with particularity the mandatory duty that

21  they claim has been violated under § 815.6.  *See Lehto*, 171 Cal. App. 3d at 292-93 ("Only by

22  [specifically alleging the applicable statute or regulation] may the public entity be advised of the

23  factual and legal basis of the claim against it.").  To the extent that Defendants' motion should

24  be treated as a Rule 12(e) motion for a more definite statement, this Court is willing to do so,

25  since "[w]ithout this requirement of specificity in pleading, [the] [C]ourt [itself] would be hard

26  pressed to determine whether the enactment relied upon was intended to impose an obligatory

27  duty . . . or whether it was merely advisory in character." *Id*. at 293.  Neither the Court nor

28  Defendants are required to peruse vast portions of various California codes in search of

10

potentially mandatory duties.  Accordingly, in any amended pleading, Plaintiffs shall set forth

for each alleged mandatory duty the specific provision(s) of law that allegedly create that duty.

**D.      Excessive and improper fees claim**

Plaintiffs' fifth claim arises from Defendants' alleged imposition of "excessive,

unreasonable, extortionate, collusive, and improper" fees in violation of California Government

Code § 66014.  Section 66014 permits local agencies to impose fees that do "not exceed the

estimated reasonable cost of providing the service for which the fee is charged."  Section

66016(a) provides the remedy for over-collection of fees under § 66014: "If . . . the fees or

service charges create revenues in excess of actual cost, those revenues shall be used to reduce

the fee or service charge creating the excess."  A facially similar provision, § 66020, also applies

to certain "fees" and authorizes a refund of any excess fees that may have been imposed.

Plaintiffs in the instant case pray for a refund pursuant to § 66020, and Defendants argue that

such a remedy is unavailable as a matter of law.

In *Barratt American, Inc. v. City of Rancho Cucamonga*, 37 Cal. 4th 685 (2005), the

California Supreme Court addressed whether a party who challenges a local agency's fees for

building inspections and permits may request both a prospective fee reduction pursuant to §

66016(a) and a refund of excessive fees pursuant to § 66020.  To summarize the court's

elaborate analysis, claims under § 66014 (1) apply to building inspection and permit fees, (2)

must be brought pursuant to § 66022, and (3) provide for a prospective fee reduction as the

exclusive remedy.  By contrast, § 66020 applies only to "'development fees' that alleviate the

effects of development on the community[;] . . . [it] does not include fees for specific

regulations or services," such as building permit and plan review fees.  *Barratt*, 37 Cal. 4th at

696.  The refund remedy provided by § 66020 is self-contained and inapplicable to violations of

§ 66014: "Surplus fees that have been refunded cannot simultaneously be 'paid forward' to

reduce fees."  *Id*. at 699.  In sum, excess fee refunds are unavailable as a matter of law in

connection with claims for violations of § 66014.

In the instant case, Plaintiffs properly ground their claim in § 66014 rather than § 66020,

since the fees they challenge were not "'development fees' that alleviate the effects of

development on the community," but "were simply fees to defray the administrative and enforcement costs of a local regulatory program." *Barratt*, 37 Cal. 4th at 696.[4]  Because there does appear to be a remedy available for Plaintiffs' fifth claim, albeit not the remedy that Plaintiffs seek, Defendants' motion to dismiss more properly may be considered a motion to strike requests for relief that is unavailable as a matter of law.  *See* Fed. R. Civ. P. 12(f); *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).  The Court agrees with Defendants that under *Barratt*, a refund of the allegedly excessive fees is unavailable as a matter of law.[5]  Accordingly, the Court will order stricken that portion of the prayer which seeks "a refund pursuant to Gov. Code §§ 66020, et seq.," and will grant Plaintiffs leave to amend their complaint to pray for any other relief authorized by the statute.

At oral argument, Plaintiffs observed that the court in *Barrett* expressly declined to decide whether "the lack of a refund remedy violates constitutional guarantees of due process." *Barratt*, 37 Cal.4th at 700 n.3.  Plaintiffs appear to argue that it does, and they are correct that the imposition of excessive fees may constitute a due process violation for which they may be entitled to compensatory damages.  *See ,e.g., ITT Lyndon Life Ins. Co. v. Crist*, 778 S.W.2d 27, 28 (Mo. App. 1989) (holding as a matter of law that state administrative processing fees in excess of $200,000, "when compared to the $500 cost . . . of providing the services on which the fees are based[,] are excessive . . . and amount to a taking in denial of due process"); *Krupp v. Breckenridge Sanitation Dist*., 1 P.3d 178, 183 (Colo. App. 1999) (noting that "permit[ting] a special district to charge excessive fees . . . might violate due process or other constitutional norms").  The Court simply will direct Plaintiffs to plead their due process or other constitutional refund claims with greater clarity in any amended pleading.

---

[4] No party disputes the proper characterization of the fees.

[5] Plaintiffs failed to address *Barratt* in their opposition, apparently conceding that they may not seek a refund and acknowledging that prospective fee reduction is the appropriate remedy.

1

### IV. CONCLUSION

2       For the foregoing reasons, Defendants' motion to dismiss will be granted as a motion for

3   a more definite statement with respect to Plaintiffs' mandatory duty claim, granted as a motion

4   to strike with respect to Plaintiffs' prayer for a refund of allegedly excessive fees pursuant to

5   Cal. Gov't Code § 66020, and denied in all other respects.  Plaintiffs shall have leave to amend

6   in a manner consistent with this order.  Any amended pleading shall be filed not later than thirty

7   (30) days from the date of this order.

8

9   **IT IS SO ORDERED**

10

DATED: 5/15/09

11

12
                                                    _____
13                                                  JEREMY FOGEL
                                                    United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-373 JF (PVT)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
(JFLC3)

This Order has been served upon the following persons:

Andrew Field Pierce     apierce@pierceshearer.com, christina@pierceshearer.com, lauren@pierceshearer.com, rita@pierceshearer.com

Jason Michael Heath     Jason.Heath@co.santa-cruz.ca.us, csl026@co.santa-cruz.ca.us

14